This is a suit to foreclose a second mortgage of $250 given by defendant Rosa Berg to complainant on the second day of January, 1935. The mortgage covers premises in the city of Elizabeth, New Jersey. *Page 57 
In February, 1934, defendant Rosa Berg made application to the Home Owners' Loan Corporation (hereinafter referred to as H.O.L.C.) for a first mortgage on said premises, title to which at the time was vested in Louisa Apartments, Inc., a corporation and then already encumbered by four mortgages in the respective amounts of $10,000, $1,500, $3,000 and $3,500. The H.O.L.C. agreed to loan on a first mortgage the sum of $9,150, and in order to comply with the rules of the H.O.L.C. title to the premises was transferred to Rosa Berg. Negotiations between the H.O.L.C. and the lienholders resulted in an adjustment of the several liens, whereby the first mortgagee was to receive $6,454.48, the second $750, the third $300, and the fourth to release without payment.
Examination of the title to the premises by the fee attorney of the H.O.L.C. disclosed that on June 22d 1932, complainant, Max Markowitz, recovered a judgment in the common pleas court of Union county against Rosa Berg, Hyman Neuringer, individually, and Max Berg, executor of the last will and testament of William Berg, in the sum of $624.98. The fee attorney communicated with the attorney of record of Max Markowitz for the purpose of adjusting the matter of the judgment and to secure a release of the premises from the lien thereof, which lien would become effective when Rosa Berg took title.
The fee attorney received from complainant's attorney the following letter:
"September 29, 1934.
Jerome R. Epstein, Esquire, 60 Broad Street, Elizabeth, New Jersey.
Dear Sir:
This is to advise you in behalf of my client, Max Markowitz, that he will accept in full settlement of his judgment against Rosa Berg, the sum of $200.00 to be paid in bonds of the Home Owners' Loan Corporation bearing interest at the rate of 2 3/4% per annum, to be delivered at the National State Bank, Elizabeth, New Jersey, and will deliver to you in behalf of Mr. Markowitz a release of the premises in question from the lien of the judgment and a covenant that he will not proceed on the judgment as against Rosa Berg.
 Very truly yours, NATHAN REIBEL." *Page 58 
This letter the fee attorney forwarded to the H.O.L.C. with his preliminary report of title. On the date for closing title complainant attended with his attorney but demanded that the defendant execute a second mortgage to him in the sum of $250 in addition to that which he was to receive from the H.O.L.C. by way of its bonds. At first defendant refused, but when it appeared to her that the loan transaction would fail, the defendant acquiesced.
The defendants in answering say the mortgage was obtained through fraud; that it lacked consideration; was obtained in violation of the rules and regulations of the H.O.L.C. and is therefore void because it is contrary to public policy. By their counter-claim they pray that the mortgage be cancelled.
At the conclusion of the hearing I determined that the defense of fraud and lack of consideration had not been sustained. The question which remains to be determined is whether this second mortgage is void because against public policy.
The Home Owners' Loan act was not passed to assist holders of liens against property, but to enable owners of homes to save their homes from foreclosure by advancing on first mortgages, sums to be used to pay off liens and to lighten the burdens of the home owners. The benefit, if any, to lien holders is incidental. In refinancing a home owners' obligations the H.O.L.C. seeks to readjust them in accordance with the ability of the home owner to make payments. The beneficial effect of such readjustment is nullified if a lienholder is permitted, without regulation, to defeat the purpose of the act. An arrangement such as here exacted by a lienholder tends to counteract the relief of the home owner sought by the act and is contrary to the purpose of the act and to the regulations adopted thereunder. Meek v.Wilson, 283 Mich. 679; 278 N.W. Rep. 731.
The supreme court of this state in Stager v. Junker, 14 N.J.Mis. R. 913; 188 Atl. Rep. 440, said: "The Home Owners' Loan act (48 Stat. 128, see 12 U.S.C.A. §§ 1461 et seq.) was intended to provide emergency relief with respect *Page 59 
to home mortgage indebtedness and the rules of the corporation provide that no loan will be made where there was a separate understanding or agreement between the debtor and the holder of the mortgage calling for any payments other than those required by the corporation. The plaintiff, in order to facilitate the loan, stated the full extent of his debt and agreed to accept a definite number of bonds at face value in full settlement thereof. He was then precluded from exacting any further or other agreement from his debtor looking to the payment of the additional sum. The mere fact that he exacted the instrument in suit, while the negotiations were pending and after he had agreed to accept a definite number of bonds in full settlement, denotesbad faith toward the lending agency." (Italics mine.)
The superior court of Pennsylvania in Anderson v. Horst,200 Atl. Rep. 721, held "that an agreement between the mortgagee and the home owner, made without the approval of the corporation, by which the home owner assumes or agrees to pay all or any part of the mortgage debt which had been settled and released by the refunding effected by the corporation, is void as against public policy and will not be allowed to be enforced by the mortgagee. * * * This construction of the act, and its effect upon subsequent agreements in conflict with or violation of its terms, is in accord with the great majority of the cases where the question has arisen. See Jessewich v. Abbene, 154, Misc. 768;277 N YS. 599; First Citizens Bank and Trust Co. v. Speaker,159 Misc. 427; 287 N.Y.S. 831; affirmed, as to the point here involved, by the appellate division in 250 App. Div. 824;294 N YS. 737; Cook v. Donner, 145 Kan. 674; 66 Pac. Rep. 2d587; 110 A.L.R. 244; Stager v. Junker, 14 N.J. Mis. R. 913;188 Atl. Rep. 440; Federal Land Bank of St. Paul v. Koslofsky,67 N.D. 322; 271 N.W. Rep. 907; Federal Land Bank of Columbia v.Blackshear Bank, 182 Ga. 657; 186 S.E. Rep. 724; Chaves CountyBuilding and Loan Association v. Hodges, 40 N.M. 326;59 Pac. Rep. 2d 671, 672. It is not in conflict with RidgeInvestment Corp. v. Nicolosi, 193 Atl. Rep. 710; 15 N.J. Mis.R. 569, and *Page 60 Bay City Bank v. White, 283 Mich. 267; 277 N.W. Rep. 888."
(Italics mine.)
Among the regulations adopted by the H.O.L.C. is chapter 6,section 4-d(1) adopted under authority of section 4(k) of the Home Owners' Loan Corporation act, 12 U.S.C.A. § 1463(k):
"The Corporation will not refund any indebtedness where the mortgagor is required to pay more than he owes, through agreements either to pay future interest to the original mortgagee, or to absorb any loss of interest by the original mortgagee, or to guarantee any difference between the face value of the bonds plus accumulated interest thereon and the market value of the same, or to cover any assumed loss on account ofthe acceptance of the bonds of the corporation by the mortgagee. The Corporation will not become a party to any contract between a mortgagor and a mortgagee in reference to indebtedness refunded by the Corporation." (Italics mine.)
Another such regulation reads:
"Where the full amount of the indebtedness against the property cannot be refunded by the Corporation, the mortgagee or otherlienholder will be permitted to take a second mortgage or second deed of trust if the amount of such second mortgage or deed of trust does not exceed the difference between the Corporation's appraisal and the amount of the Corporation's first mortgage. In no case shall the second trust or second mortgage to such other mortgagee or lienholder be in terms which would cause the mortgagor's payments to the Corporation to be a hardship, or deprive the mortgagor of reasonable opportunity to pay such second mortgage or second trust." (Italics mine.)
According to the evidence before me approximately $400 of the H.O.L.C. mortgage loan was not expended. However, implicit in the foregoing regulation is knowledge by the H.O.L.C. of the intention to exact a second mortgage from the home owner. Without this knowledge it would be impossible for the H.O.L.C. to determine whether the terms of the second mortgage would cause the mortgagor's payments to it to be a hardship or whether it would deprive the mortgagor of reasonable opportunity to pay such second mortgage. In this connection it is to be observed that the judgment creditor through the letter written by his attorney to the H.O.L.C. not only agreed to release his judgment with *Page 61 
respect to the lien but also agreed that "he will not proceed on the judgment as against Rosa Berg [the mortgagor]." This indicates that the H.O.L.C. was interested not only in the lien or encumbrance against the land but in the debt as such since the enforcement of the debt as such might embarrass the mortgagor in making her payments to the H.O.L.C.
After this letter was forwarded to the H.O.L.C. nothing further transpired until the day of closing when the judgment creditor demanded the mortgage in question which fact was not communicated by the fee attorney to the H.O.L.C.
By taking the second mortgage complainant repudiated his agreement in two respects: (1) he insisted upon a further lien against the land; (2) he insisted upon the continuance of the debt which in substance was a violation of his agreement not to proceed upon the judgment against the mortgagor.
But the complainant contends that the fee attorney was the agent of the H.O.L.C. and since he had knowledge of the execution of the second mortgage, that knowledge was the knowledge of the corporation. This contention is unsound. From the evidence it is clear that the authority of the fee attorney was limited to an examination of the title and at the closing (after adjustment of the encumbrances against the property) to deliver the bond authorizations to the various encumbrancers and to receive from the mortgagors a first lien bond and mortgage to the H.O.L.C. There is no proof before me that the fee attorney possessed the power to bind the H.O.L.C. and to approve the giving of the mortgage. The fee attorney was a special agent of the corporation without authority from it to either approve of, or permit complainant to take a second mortgage. Where the question of agency arises the power of the special agent to do the act must be shown. Black v. Shreve, 13 N.J. Eq. 455, 459. "As to such an agent [special agent] it is settled that he does not bind his principal, unless his authority be strictly pursued, and those dealing with him are chargeable with notice of its extent."Cooley v. Perrine, 41 N.J. Law 322, 325. *Page 62 
A special agent, as distinguished from a general agent, is one employed for a particular purpose only, and if he exceeds his authority the principal is not bound. Scherer v. Post OfficeBuilding and Loan Association, 91 N.J. Law 666;103 Atl. Rep. 202.
The execution of the second mortgage without the knowledge of the H.O.L.C. in contravention of the act and the regulations made thereunder renders the mortgage void as against public policy.
The bill of complaint will be dismissed, and decree advised upon the counter-claim cancelling the mortgage.