George F. Brown and Luzelle Clark Brown, Appellees, v. Sears, Roebuck and Company and F. B. McConnell, Trustee, Appellants.

Gen. No. 9,657.

Heard in this court at the May term, 1941. Opinion filed August 27, 1941. Rehearing denied October 7, 1941.

LEDERER, LIVINGSTON, KAHN & ADSIT, of Chicago, and JAMES HERRINGTON SCOTT, of Geneva, for appellants; SIGMUND LIVINGSTON, of Chicago, JAMES HERRINGTON SCOTT, of Geneva, and ROBERT J. WEISS, of Chicago, of counsel.

EARL R. SHOPEN, of Elgin, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

Appellees, George F. Brown and Luzelle Clark Brown, husband and wife, by their amended complaint sought to have their note dated March 6, 1935 for $500 and a junior trust deed executed by them to secure the payment of the same declared null and void and to enjoin the defendants from bringing suit on said note or from foreclosing said trust deed. The defendants, Sears, Roebuck and Company, the owners and holders of said note and trust deed, and the trustee, F. B. McConnell, answered, and after the issues had been made up, a hearing was had before the chancellor, resulting in a decree granting the plaintiffs the relief sought. To reverse that decree, the defendants have appealed.

The record discloses that in 1934 appellees were indebted to appellant, Sears, Roebuck and Company in a sum exceeding $5,000. This indebtedness was evidenced by notes dated June 5, 1926 and October 21, 1932, which were secured by two trust deeds upon premises in Elgin, occupied by appellees as a homestead. On July 30, 1934 appellees filed their written application with the Home Owners' Loan Corporation, (hereinafter referred to as HOLC) applying for a loan of $5,850. This application, among other things, recited that Sears, Roebuck and Company, of Chicago, Illinois held mortgages upon their homestead, upon which there was due at that time a balance of $4,925.30 on the principal and unpaid interest amounting to $103.94, and that the total amount of incumbrances, taxes and paving assessments against their property aggregated $5,776.16. In October or November following, a representative of Sears, Roebuck and Company informed appellees that the net amount available to this company from the proposed HOLC loan would be around $3,990, which they were not willing to accept, but would do so if appellees would give the company a note for $500 secured by a second mortgage. Appellees agreed to do this, and on January 15, 1935 executed their note to HOLC for $4,540 and secured its payment by a first mortgage on their homestead. Prior to this and on January 11, 1935, Sears, Roebuck and Company executed the following instrument, viz:—

"To HOME OWNERS' LOAN CORPORATION:

The undersigned is a holder of a first mortgage or other obligation, which constitutes a lien or claim on the title to the home property of—

*George F. Brown,* located at *400 Adams Street, Elgin, Illinois* in the sum of $*5010.59* including unpaid balance of principal and interest, to date.

Being informed that said owner has made application to Home Owners' Loan Corporation to refund his said indebtedness, the undersigned has considered the method of refunding mortgages provided in Home Owners' Loan Act of 1933, as amended and passed by Congress and approved by the President, and the undersigned hereby consents, if said refunding can be consummated, to accept in full settlement of the claim of the undersigned the sum of $3854.00, face value of the bonds of Home Owners' Loan Corporation, to be adjusted with not exceeding $25 cash and thereupon to release all the claim of the undersigned against said property.

It is understood that the Home Owners' Loan Corporation will incur trouble and expense ·in connection with its effort to refund the indebtedness of said home owner, and this consent is executed in consideration of the same and shall be binding for a period of 60 days from date, and thereafter until 10 days written notice shall have been given the State manager of the Corporation.

This, the 11th day of January, 1935.

The following information should be furnished by the mortgagee:

Date of mortgage .......... date due .....
 balance due ...........................$4925.30
Interest at 6%. Due from 9/15/34 to
 1/15/35 .............................$  85.29
Total amount due to mortgagee $5010.59 as
 of 1/15/35.''

Accompanying this consent, according to the testimony of L. C. Jann, who had supervision of the refinancing of this loan and who was connected with the mortgage loan department of Sears, Roebuck and Company at that time, was a letter of the same date

addressed to the Home Owners' Loan Corporation, Re: Appl. 63975, Geo. F. Brown, Elgin, Illinois. This letter is as follows:

"Gentlemen:

Enclosed herewith our Consent to accept the sum of $3854.00 in HOLC bonds in full satisfaction of our mortgage in connection with the above application, submitted with the understanding that we be permitted to take a note and second mortgage for $500.00, payments on which are to conform to HOLC regulations of interest only for three years and amortized payments of $10.00 monthly thereafter.

Yours truly,

Sears, Roebuck and Co., Mortgage Loan Department

By: L. C. Jann."

In March 1935, the authorization for the delivery of HOLC bonds to Sears, Roebuck and Company was received by it, and on April 5, 1935 cash and bonds aggregating $3,854 were received from HOLC and accepted by this appellant. The mortgages which they held were thereupon released of record and the evidences of indebtedness canceled and surrendered to appellees and as a part of this transaction, appellees executed their note dated March 6, 1935 for $500. Interest only payable on the 15th day of March in each year after the date thereof at the rate of 5 per cent per annum, until and including March 15, 1938, then instalments of $10 including interest at 5 per cent, payable on the 15th day of each and every month in each year, beginning April 15, 1938 and continuing until the sum of $190.70 shall have been paid on the principal and the balance of $309.30 in five years after the date thereof, all principal and interest remaining unpaid to become due and payable on March 15, 1940. To secure the payment of this note, appellees executed their junior trust deed which recited that it was subject to

the HOLC incumbrance. This note and trust deed were delivered to Sears, Roebuck and Company and duly recorded and are the instruments appellees seek to have canceled by this proceeding. The evidence further discloses that appellees paid the interest on said note amounting to $25 each year for three years which includes the interest to March 15, 1938 and thereafter on March 29, 1939, this proceeding was instituted.

Counsel for appellees state that upon this record it is for this court to decide whether notice was required to be given by Sears, Roebuck and Company to HOLC of its intention to obtain a second mortgage from appellees, and if so, then the essential question of fact, is whether or not HOLC received the letter of January 11, 1935 hereinbefore referred to, which Mr. Jann testified accompanied the consent of Sears, Roebuck and Company to accept $3,854 in settlement of its notes and trust deeds upon which there was then due $5,010.59.

This letter advised the corporation that Sears, Roebuck and Company would accept the sum of $3,854 with the understanding that it be permitted to take the note and junior trust deed involved in this proceeding. Mr. Jann testified that on January 11, 1935 he executed both the consent and the letter and attached one to the other, using a Hotchkiss paper fastener. That the original letter (an office carbon copy of which he produced upon the hearing) and the consent, after having been signed and fastened together, was placed in an envelope and the envelope placed in the outgoing mail basket; that there was a U. S. Postal substation in the Sears Plant; that on January 11, 1935 there was a definite and established custom as to mailing of letters which was in practice at that time and has always been followed; that in the instant case the usual practice was followed and this envelope containing the consent and letter were

placed in an outgoing mail basket after which it was the duty of designated file clerks to pick them up and see to it that they left the office properly mailed.

The evidence is further that Mr. Jann never saw the original letter after it was so mailed. The consent to which it was attached was produced upon the hearing by the custodian of the closed loan file of HOLC, but the letter which Mr. Jann said was fastened thereto was not produced and the testimony is that it was not found in this file and that this file contained all the official documents in connection with this loan, and that there was no other file in connection therewith except a correspondence folder. The attorney who closed this loan for HOLC testified that he had examined the closed loan file and that to the best of his knowledge it was in the same condition when it was produced upon the hearing as it was when he closed the loan, and that he did not close any loans that involved the giving of a second mortgage. That when he received this file the consent executed by Mr. Jann was, as he recalled it, in the file at that time, but he did not remember receiving any letter in connection with the consent. He further testified that when the loan was closed up and he was through with the file he sent it back to the HOLC clean up department and that he thought there was some correspondence in connection with this loan which he did not find. Mr. Ballard, who had custody of the closed loan file testified that there was a correspondence file which contained correspondence since the loan was closed, but that he had no knowledge of what happened to correspondence which took place before the loan was closed.

H. D. Walther testified that he was the assistant regional manager of the HOLC until January 1, 1936 and was the highest ranking official having supervision of loans made in the district embracing Kane county; that pursuant to HOLC rules and regulations, employees were asked to note on the consent blank that a

second mortgage was being taken and were directed to inquire into the terms of the second mortgage and that the consent executed by Sears, Roebuck and Company bore no notation concerning a proposed second mortgage. This witness further testified that he knew of no regulation of HOLC requiring notice to be given by the proposed taker of a second mortgage in connection with refinancing, and that the rules and regulations in effect when this second mortgage was executed provided: ''Where the full amount of the indebtedness against the property cannot be refunded by the Corporation, the mortgagee or other lien holder will be permitted to take a second mortgage or deed of trust—second deed of trust, if the amount of such second mortgage or deed of trust does not exceed the difference between the Corporation's appraisal and the amount of the Corporation's first mortgage. In no case shall the second trust or mortgage to such other mortgagee or lien holder be in terms which would cause the mortgagor's payments to the Corporation to be a hardship, or deprive the mortgagor of reasonable opportunity to pay such second mortgage or second trust.''

The evidence is further that the manager of HOLC appraised appellees' premises at $6,000. The difference between this amount and $4,540, the amount of the first mortgage is $1,460. Appellees' second lien is for $500 and it is conceded that the rate of interest, —5 per cent—the payments, and all other provisions of the note and junior trust deed executed by appellees and accepted by Sears, Roebuck and Company, are in accordance with the rules and regulations of HOLC.

In *Bealkowski v. Powers*, 310 Ill. App. 662, 35 N. E. (2d) 386, it appeared that the defendants were indebted to the plaintiff, Bealkowski, in the sum of $2,332 evidenced by a note secured by a first mortgage upon the home of the defendants. With the knowledge of the plaintiff the defendants applied to HOLC for a

loan to take up plaintiff's indebtedness. Plaintiff agreed with HOLC to accept $1,585 from it in full settlement of his claim against the defendants. The instrument which Bealkowski signed recited that if the indebtedness to him was refunded by HOLC that he would accept in full settlement thereof the sum of $1,585 in bonds at par and thereupon discharge all claims against the property, and that he required no . additional consideration of the defendants. Prior to signing this agreement, Bealkowski exacted from Mr. and Mrs. Powers a judgment note for $250 which formed the basis of his suit. In reversing a judgment for the plaintiff, the court cited many of the authorities relied upon by counsel in the instant case and held that plaintiffs' attempt to enforce his note against the defendants was a breach of his agreement with HOLC and obviously an attempt to require payment of money as additional consideration and that a part payment in full settlement of a liquated indebtedness by or with the aid of a third person discharges in full the entire original debt. The opinion quotes from Restatement of Contracts, sec. 421 and from 1 Corpus Juris 545, sec. 51 to the effect that a payment or other performance by a third person, accepted by a creditor as full or partial satisfaction of his claim, discharges the debtor's duty in accordance with the terms on which the third person offered it and payment by a third person of a sum less than the amount due, with the understanding that it should be in full satisfaction thereof, is a valid accord and satisfaction, and no action will lie against the debtor to recover the balance. After reviewing a number of cases the court said: ''It would appear from the cases involving the Home Owners' Loan Corporation that the mortgagee's consent to take bonds operates as a release in .full of the debtor's liability, and that, therefore, any additional consideration taken by the creditor representing an alleged loss in the refinancing is

void. . . . It would appear, as we have already indicated, that the Home Owners' Loan Act of 1933 was an emergency measure enacted for the relief of home owners who were unable to carry or refund their mortgage indebtedness. It provided for the exchange of HOLC bonds and cash for the mortgage and bond, or other obligation held by the mortgagee, and for the execution of a new mortgage by the home owner to the Home Owners' Loan Corporation. It is apparent that the purpose and intent of the act was to free the owners' home property from an oppressive mortgage or other liens, and to reduce and settle his obligations so as to give him a chance to become rehabilitated. . . . In view of plaintiff's signed representation to the HOLC that he would no longer require of defendants any more money or other consideration, it can hardly be urged, and indeed has not been urged in the instant case, that the HOLC was aware of the existence of the cognovit note upon which was predicated the judgment at issue.''

In the instant case, the uncontradicted evidence is that the consent agreement executed by Sears, Roebuck and Company was accompanied by its statement to the effect that it would only accept $3,854 from HOLC in full satisfaction of its mortgage with the understanding that it be permitted to take a note and second mortgage for $500 and this note and junior mortgage would conform to HOLC requirements. Counsel for appellee insist there was no direct evidence that HOLC received this notice of Sears, Roebuck and Company to take a second mortgage and cites cases to the effect that an unanswered letter is self-serving and, therefore, inadmissible in evidence. The consent executed by Sears, Roebuck and Company differs from the one executed by the plaintiff in the *Bealkowski* case in that it did not recite that Sears, Roebuck and Company would not require any additional security. Not only that, but the letter informed

HOLC that it would require a second mortgage. The officials of HOLC produced upon the trial of this cause the consent, and it disclosed holes and perforations made by a Hotchkiss paper fastener. The envelope containing this consent was duly received by HOLC and while the evidence is circumstantial in a measure, the only reasonable conclusion from all the evidence and the facts and circumstances in evidence, is that this letter was received by HOLC at the time it received the consent to accept bonds. The only evidence that HOLC did not receive this letter is the fact that it was not found in the closing file of this loan more than four years after the file had been completed. This fact, in our opinion, does not overcome the positive testimony of Mr. Jann to the effect that he signed this letter and consent, fastened them together and placed them in an envelope and placed the envelope in an outgoing mail basket, where, in the usual course of business, it would be picked up and properly mailed. The consent was duly received by the party to whom it was addressed and the presumption is that the letter reached its destination inasmuch as the envelope in which it was inclosed and the consent to which it was attached reached their destination. Furthermore, early in 1936 HOLC knew that Sears, Roebuck and Company had taken second mortgages in a number of instances where its loans had been refinanced by HOLC and a list of the names of such mortgagors in Illinois and Wisconsin, was furnished special agents of HOLC and on July 30, 1936 the head attorney of HOLC, having received the list from the special agent, advised Sears, Roebuck and Company by letter that the note and junior mortgage of appellees which Sears, Roebuck and Company held, conformed to HOLC regulations and that there was no need for any adjustment in connection therewith. On May 27, 1934 HOLC, by its general manager, Wm. H. McNeal in Washington, D. C. advised Sears, Roebuck and Company that it was

"the policy of the Board of this corporation to permit mortgagees to take second mortgages subject to our first lien equal to an amount of 20% of our corporation appraisal value provided that such second mortgage is taken on such terms as will permit the borrower to carry second mortgage payments as well as first mortgage payments without causing him to again lapse into distressed financial conditions." The evidence in the case is that appellee, George F. Brown, at the time he applied for the HOLC loan was employed by the Chicago, Milwaukee and St. Paul Railroad earning $140 per month and his wife was receiving a salary of $55 per month, that his wages have been increased and he was earning $175 per month at the time of the hearing.

The chancellor held that in this transaction Sears, Roebuck and Company practiced no fraud in obtaining from appellees the note and junior trust deed which forms the basis of this suit and the evidence abundantly sustains this finding. After the consent agreement which Sears, Roebuck and Company executed in this case was received by HOLC, that corporation adopted a new form to be used by holders of an indebtedness which HOLC was refinancing and this form contains the clause obligating such holder not "to require of the applicant (for an HOLC loan) any second mortgage or other instrument evidencing any portion of the aforesaid obligation or the payment of any money or any other additional consideration except only as follows. . . ." This clause was not in the consent executed by Sears, Roebuck and Company. The law permitted appellees to place a junior mortgage on their home; it was the policy of HOLC to permit mortgagees to take second mortgages in a given amount subject to the first lien, and subject to certain conditions. The evidence discloses that neither any provision of the law creating HOLC nor any of the rules and regulations adopted in pursuance thereof

were violated by Sears, Roebuck and Company in the instant case.

Upon this record, it is not necessary for us to determine whether Sears, Roebuck and Company was required to give notice to HOLC of its intention to obtain from appellees a note for $500 and a junior trust deed to secure the same. We hold it did give such notice, that no fraud was practiced upon appellees in obtaining said note and trust deed, and that subsequently, with knowledge of all the facts, HOLC approved said instruments and informed Sears, Roebuck and Company that they conformed with the regulations and requirements of HOLC.

The decree of the circuit court is reversed and this cause is remanded with directions to dismiss the complaint.

*Reversed and remanded with directions.*