KNOX et ux. v. GEISLER.

No. 30669. June 1, 1943.

*138 P. 2d 811.*

Mauntel & Spellman, of Alva, for plaintiffs in error.

Hadwiger & Hadwiger, of Alva, for defendant in error.

WELCH, J. In the trial court plaintiff obtained judgment upon a promissory note executed by the defendants.

The defendants had purchased a farm from plaintiff paying therefor $4,000 cash and delivering their note for $3,000, balance of the purchase price, secured by mortgage on the land. In November, 1933, this note was past due and the defendant obtained from Federal Land Bank a loan of $2,300 secured by first mortgage on the land. Plaintiff accompanied defendants to the office of the agent of said bank in co-operation with defendants' effort to obtain the loan from said bank. Plaintiff then and there signed the following letter which was transmitted to the bank in this connection:

"Beaver, Oklahoma, Nov. 26, 1933

"In re: C. C. Knox loan
"Appl. 11457
"To the Federal Land Bank of Wichita
"As Agent of the Land Bank
   Commissioner
"Wichita, Kansas

"Dear Sir:

"At the request of the above named applicant I am writing you this letter to state that I am the owner and holder of a note of $3,000.00 and said note is signed by Charles C. Knox and the mortgage which secures the same, which mortgage is filed for record in Beaver County, Oklahoma, and recorded at 77 Mtg. Record, page 401.

"Upon the receipt of $2,100.00 to me paid from the proceeds of above loan I will surrender to you the $2,100.00 note and mortgage and a proper release of the same.

"Please mail the check to the Farmers National Bank at Elk City, Oklahoma, and I will call there and surrender the note and mortgage and a proper release of the mortgage.

"Yours very truly
"(Signed) Frank Geisler
"Creditor."

The evidence indicates that plaintiff signed the following receipt:

"Receipt is acknowledged of your check No. 147851 tendered in full payment of the indebtedness indicated on said check. Enclosed please find all notes or other evidence of said indebtedness, also all other papers called for in your remittance letter accompanying said check. 85 cents fee for recording, release is enclosed. (Signed) Frank Geisler, Creditor or lien holder."

There is no conflict that on March 26, 1934, plaintiff accepted the Federal Land Bank's check for $2,100 and cashed same. To such check there was attached the following:

"For full release of mortgage recorded in Book 77, page 401, of the records of Beaver County, Oklahoma, executed by Charles C. Knox in favor as per lien statement furnished us dated November 26, 1933."

On March 24, 1934, defendants delivered to plaintiff their unsecured note representing the difference between the amount due under the original $3,000 note and the $2,100 check accepted by plaintiff from the Federal Land Bank. This suit is for recovery on that unsecured note of March 24, 1934.

We think the position of defendants may be best shown by quotation from their brief as follows:

"Plaintiffs in error believe that the entire question in this case is that where the Federal Land Bank refunded mortgage indebtedness without knowledge that the mortgagee was taking from mortgagor a promissory note for difference between proceeds of loan and amount of debt refunded, the same was invalid and unenforceable."

We are favored with citations in the briefs herein, including our own decision in Local Federal Savings & Loan of Oklahoma City v. Harris, 188 Okla. 214, 107 P. 2d 1012, wherein we considered the effect of an agreement to remain indebted for the difference between the amount received from H.O. L.C. loans and the original debt. Other cases of the same general nature have been examined by us, many of which are cited in McAllister v. Drapeau, 14 Cal. 2d 102, 92 P. 2d 911.

The trend of the majority of such cases would seem to be that the H.O.L.C. law itself, including the proper regulations, does not ipso facto and in every event prohibit the continuance of the obligation for such difference. Ridge Inv. Corp. v. Nicolosi, 15 N. J. Misc. 569, 193 Atl. 710. The opinions would seem to be generally to the effect that if the agents of H.O.L.C. have knowledge that the original debtor and creditor have agreed to recognize the difference as a continuing obligation, then the same is held to be valid, except in those cases wherein it is shown that the amount thereof is in excess of that fixed by a valid and inflexible regulation set up by the H.O. L.C. effective as law.

Most of those cases are based upon the theory that the original creditor or mortgagee actively represents to H. O. L. C. that he is in fact canceling his entire debt, thus inducing the corporation to make the loan, in which event he is estopped from entering into a contrary arrangement without the knowledge of and contrary to his agreement with and representation to the corporation.

We may be quite certain that many of the rules of law applied in the H. O. L. C. cases would apply with equal force where the Federal Land Bank is assisting the debtor with a loan. That institution has been said to be a federal instrumentality with principal objects somewhat similar to the objects of H. O. L. C. See Federal Land Bank et al. v. Koslofsky et al., 67 N.. D. 322, 271 N. W. 907; Smeltzer v. McCrory (Tex. Civ. App.) 101 S. W. 2d 850; O'Neil v. Johnson, 29 Fed. Supp. 307; Bell v. Jones, 100 Utah, 87, 110 P. 2d 327. If there is in any case a proper finding of fact constituting an accord and satisfaction or constituting fraud and misrepresentation to induce the new loan, then many of such rules would doubtless apply whether or not the lending

agency was an instrumentality of the sovereign with objects as shown.

It follows, then, that it is generally a question of fact in each case, (1) whether or not the original debtor and creditor agreed to a cancellation of the entire debt; (2) if so, whether such agreement was contrary to the actual or implied representations made to the lending agency, and (3) whether the agreement, though known to all parties, is in violation of law, either statute or valid regulations having the effect of law.

As to the third above-named element, we observe a rather marked distinction between the H. O. L. C. acts and valid regulations and the Federal Land Bank law. The H. O. L. C. acts and valid regulations contain more detailed statements of objects and provide in some instances arbitrary limits and restrictions. The Acts of Congress, 48 Stat. 41, and the cases called to our attention disclose far less detail in that regard, and we have not found wherein any arbitrary limit is set as relates to the amount of carry-over indebtedness which may be accomplished by agreement. From this record and the law brought to our attention we are unable to say that the law would prohibit an agreement openly entered into by the parties as claimed by plaintiff here.

The facts as relate to elements 1 and 2 above stated were disputed and were submitted to a jury upon competent evidence. The general verdict was in favor of plaintiff and will not be disturbed if reasonably supported by the evidence.

Upon trial plaintiff claimed that the written instruments above quoted were executed solely for the purpose of effecting a release of its mortgage on the land, and it was not the intention of the parties to cancel any portion of the debt. Both parties introduced parol evidence in that regard and the verdict of the jury is supported by such evidence.

On the fact question as concerns whether the bank knew of the agreement and whether it was induced to make the loan by any fraud or misrepresentation, we find the following developed by the evidence: Plaintiff and the landowner defendant in each other's presence discussed the loan matter with the agent of the bank, and plaintiff expressed his unwillingness to lose the difference between the proposed loan and his debt; although the bank had a form generally used which was offered in evidence, containing the following provisions:

"The undersigned creditor further agrees, and, for the purpose of assisting the above named applicant in obtaining a loan from The Federal Land Bank and/or the Land Bank Commissioner, hereby represents to The Federal Land Bank and/or the Land Bank Commissioner that, directly or indirectly, no note, mortgage or other consideration or evidence of indebtedness has been or will be received from the debtor, incident to such acceptance or payment as hereinbefore provided, if made, other than the consideration paid by The Federal Land Bank and/or the Land Bank Commissioner; that no present agreement between the creditor and the applicant, or any other person, for the giving of any such note, mortgage, or other consideration or evidence of indebtedness, exists; that when said consideration is paid, all claims of this creditor against the above named debtor will have been satisfied in full; and that no person, firm, or corporation, other than the undersigned, is the owner of any interest in said indebtedness."

The same was not employed in this instance, but instead the above-quoted letter of November 26, 1933, was prepared by the agent and signed by plaintiff. Such letter carefully omits the clear statements as to remission of any remainder of indebtedness. The letter on its face contains some contradictions in that it proposes to surrender the "$2100.00 note" which is some indication that plaintiff and the parties preparing the letter had in mind the intention on the part of plaintiff to surrender only the $2,100 portion of his note which would be paid from the loan. There is no evidence in this record disclosing that defendants were in

a strained financial condition or that the bank required, expected or desired that any of defendants' obligation be scaled down, reduced, or compromised. We do not understand that the law requires that it do so or that it is prohibited from loaning funds unless that is done.

We think the general verdict in that regard sufficiently supported by the evidence as a whole.

Finding no reversible error, the judgment is affirmed.

All the Justices concur.